IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-00884-EWN-BNB

MARICELA CARBAJAL,

Plaintiff,

v.

LINCOLN BENEFIT LIFE COMPANY, a Nebraska company,

Defendant.
_____

## ORDER
_____

This matter is before me on the following:

(1) Plaintiff's **Motion to Compel** [Doc. # 51, filed 12/8/2006] (the "Motion to

Compel"); and

(2) Plaintiff's **Motion for Default and Other Appropriate Sanctions** [Doc. # 59,

filed 12/14/2007] (the "Motion for Default").

The Motion to Compel is GRANTED IN PART and DENIED IN PART. The Motion for

Default is DENIED.

### I. The Motion to Compel

The Plaintiff's Motion to Compel addresses three production requests:

> **Production Request No. 16**: Produce all DOCUMENTS relating
> in any manner to any attempts or efforts made to exhume the body
> of Miguel Carbajal.
>
> **Response**: Lincoln Benefit objects to this request on the grounds
> the extent that it seeks information protected by the attorney-client
> privilege, work product doctrine, or any other applicable privilege

> or protection. Lincoln Benefit further objects to this request to the extent that any applicable Mexican or international law may require that such information be kept confidential. Subject to the foregoing objections and without waiving the General Objections, Lincoln Benefit responds that it will produce non-privileged documents responsive to this request subject to an appropriate protective order and upon receipt of some documents from counsel from Mexico.

Motion to Compel at p.4.

> **Production Request No. 14**: Produce all DOCUMENTS received or sent to any government agency or entity, including Mexican government or agency regarding the INCIDENT.
>
> **Response**: Lincoln Benefit objects to this request on the ground that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Lincoln Benefit also objects to this request to the extent that it constitutes more than one request, as it seeks at least four separate categories of documents. Lincoln Benefit objects to the use of the work "incident" in this Request for Admission since, as defined, it assumes a matter at issue in this case, the death of Miguel Carbajal. Lincoln Benefit further objects to this request to the extent that it calls for information that may be required to be kept confidential and which is not subject to discovery in a civil action pursuant to the provisions of, inter alia, the Fraudulent Crimes and Arson Information Reporting Act, C.R.S. § 10-4-1001 et seq., specifically Section 10-4-1003(1)(b) and is required to be held in confident pursuant to C.R.S. § 10-4-1006(1)(c). Lincoln Benefit further objects to the extent any applicable Mexican or international law may require that such information be kept confidential. Subject to the foregoing objections and without waiving the General Objections, Lincoln benefit responds that it will produce non-privileged documents that were provided to the Agente del Ministerio Publico Federal in Zacatecas, Mexico upon receipt from counsel in Mexico, and subject to an appropriate protective order Lincoln Benefit did not separately provide documents to any other Mexican governmental agency regarding the claim. As Lincoln Benefit advised David Olivas, counsel for Plaintiff, by letter dated August 19, 2004 (previously produced and identified as bates Nos. LBL682-684), a notification of suspected fraud was made to the Colorado Division of Insurance as required by law. The letter to Mr. Olivas was copied to the Colorado Division of Insurance. The

> notification and other communications with state authorities, however, are confidential and not discoverable pursuant to the Colorado statutes. The Lincoln Benefit claims file relating to Miguel Carbajal was provided to the Office of the Colorado Attorney General when requested. That file has previously been produced to Plaintiff as part of Lincoln Benefit's Rule 26 Disclosures.

Id. at p.11.

> **Production Request No. 17**: Produce all DOCUMENTS containing any correspondence between and among the insurance companies and their counsel. These documents should include, but not be limited to, the letters from Frank Patterson to you before suit was filed. (Example August 5, 2005 letter).
>
> **Response**: Lincoln Benefit objects to this request on the grounds that it seeks information protected by the joint defense privilege, the attorney-client privilege, common interest privilege, work product doctrine, and other applicable privilege. Lincoln Benefit further objects to this request on the grounds that it seeks information subject to the confidentiality provisions of C.R.S. § 10-4-1003(8)(c) and any other applicable provisions of Colorado law requiring information to be kept confidential. Subject to and without waiving the foregoing objections and the General Objections, Lincoln Benefit responds that it has produced non-privileged documents responsive to this request in its Rule 26 Disclosures.

Id. at p.14.

In addition to its responses to the production requests, Lincoln Benefit has provided a privilege log that lists 30 documents which have been withheld on a claim of privilege, in every instance asserting the privilege created by section 10-4-1003, C.R.S., and in two instances also asserting the attorney-client privilege. The privilege log is incomplete, however, and notes on its face:

3

> After [August 19, 2004, when Lincoln Benefit denied the plaintiff's claim], attorney-client privileged communications between Mel Rakoczy, Lincoln Benefit Life and Leanne De Vos, Sherman & Howard, occurred in anticipation of litigation. Leanne De Vos is litigation counsel to Lincoln Benefit and numerous attorney-client privileged communications have occurred since litigation was commenced. **Each such privileged communication will not be separately logged**.
>
> Lincoln Benefit Life retained additional counsel following receipt of the August 6, 2004 letter from Plaintiff's attorney David Olivas and after subsequent communications with Mr. Olivas to obtain advice on possible exhumation of the Las Huertas gravesite in Mexico. Privileged communications occurred among Lincoln Benefit Life, primarily Mel Rakoczy, and Lincoln Benefit's counsel: Geoffrey Tong and other attorneys, Manatt Phelps Phillips, 11355 W. Olympic Blvd., Los Angeles, CA 90064; Uriel Marquez Valerio and Uriel Marquez Cristerna, Zacatecas, Jalisco, Mexico; Bernardo del Real, Jalpa, Zacatecas; and Enrique Hernandez, Jalpa, Zacatecas. **Communications among counsel and representatives of Lincoln Benefit, and documents and notes constituting attorney work product, will not be separately logged**.

Lincoln Benefit Life's Log of Privileged Documents (Revision 1) at p.5 (emphasis added).

Initially, I find that Lincoln Benefit's privilege log is not adequate. Lincoln Benefit's position appears to be that it is not required to include on its privilege log documents claimed to be subject to the attorney-client privilege but created after it denied the plaintiff's claim and once litigation was anticipated. I previously rejected a similar argument in Horton v. United States, 204 F.R.D. 670 (D. Colo. 2002):

> Finally, . . . Dunmire asserts that documents exchanged between a client and its lawyers subsequent to the initiation of the litigation and concerning the litigation need not be included in the privilege log. Nothing in Rule 26 supports the position asserted by Dunmire, however, and Dunmire has not directed me to any supporting authorities. To the contrary, the plain language of Rule 26(b)(5) extends to all documents withheld from production on a claim of

> privilege. In addition, the cases imposing the requirement of a privilege log do not carve out of the requirement documents between a lawyer and client created after the initiation of the litigation. Moreover, common sense dictates that even post-filing correspondence and materials exchanged between lawyer and client must be listed on the privilege log. It is certainly possible that such a document might be copied to a third party, thus destroying any privilege that otherwise would attach. Consequently, the mere fact that a document concerning the litigation is created and exchanged between lawyer and client after the lawsuit is commenced does not mean necessarily that the document is privileged and not subject to discovery.

Id. at 673 (internal citations omitted). Accord FG Hemisphere Associates, LLC v. Republique Du Congo, 2005 WL 545218 *7 (S.D.N.Y. March 8, 2005)(holding that a defendant's argument that it need not include post-filing documents on a privilege log is "not supported by law or logic").

A party resisting discovery based on a claim of privilege has the burden of establishing that the privilege applies. Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984)("A party seeking to assert the privilege must make a clear showing that it applies"). Under Fed. R. Civ. P. 26(b)(5), when a party withholds documents or other information based on the attorney-client privilege, the party "shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." To satisfy the burden established by Rule 26(b)(5), the party asserting the privilege must provide a privilege log that describes in detail the documents or information claimed to be privileged and the precise reasons the materials are subject to the privilege asserted. Horton v. United States, 204 F.R.D. at 673. At a minimum, the privilege log must identify the author or origin of the document; any documents or materials attached to the

5

document; all recipients of the document, including addressees and persons or entities receiving copies; the date of origin of the document; and a description of the contents of the document in sufficient detail as to reveal why it is subject to the asserted privilege.

A major area of dispute between the parties in this case is the applicability and scope of the defendant's asserted "joint defense privilege" and "common interest privilege." Motion to Compel at pp.14-15; Lincoln Benefit Life Company's Response to Plaintiff's Motion to Compel ("Lincoln Benefit's Response") at pp.10-11. The common interest privilege, frequently referred to by federal courts as the joint defense privilege,[1] has been defined as follows:

> The joint defense privilege preserves the confidentiality of communications and information exchanged between two or more parties and their counsel who are engaged in a joint defense effort. Waiver of the joint defense privilege requires the consent of all parties participating in the joint defense. The joint defense privilege is merely an extension of the attorney-client privilege and the work-product doctrine. In other words, it confers no independent privileged status to documents or information. Thus, to be eligible for protection under the joint defense privilege, it must be established that the materials fall within the ambit of either the

---

[1] In Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 213 B.R. 433, 435 n.1 (Bankr. S.D.N.Y. 1997), the court noted:

> Federal courts have used the term "joint defense privilege" to refer to both the joint client privilege and the common interest rule privilege. . . . The joint client doctrine applies when clients share the same lawyer; whereas the common interest or allied lawyer doctrine applies when parties with separate lawyers consult together under the guise of a common interest or defense. Although the doctrines are conceptually different, the interchangeable use of the phrase "joint defense privilege" to refer to both of them has engendered considerable confusion.

Here, I understand the defendant to use the term joint defense privilege to refer to the situation where independently represented parties have agreed in one manner or another to pursue a joint defense.

> attorney-client privilege or the qualified immunity afforded to work product.

Metro Wastewater Reclamation Dist. v. Continental Casualty Co., 142 F.R.D. 471, 478 (D. Colo. 1992; accord Static Control Components, Inc. v. Lexmark Int'l, Inc., 2007 WL 219955 *3 (D. Colo. Jan. 25, 2007).

To invoke the joint defense privilege, in addition to showing each of the elements necessary to establish the attorney-client privilege or work-product immunity, a party also must establish that the withheld information (1) arose in the course of a joint defense effort and (2) was designed to further that effort. In re Grand Jury Proceedings, 156 F.3d. 1038, 1042-43 (10th Cir. 1998); Static Control, 2007 WL 219955 at *3.

An adequate privilege log is particularly necessary where a joint defense privilege is asserted to assure that only parties subject to the joint defense are included within the communications.

The record here is barren of any adequate showing. The only privilege log is limited to 30 documents, only two of which are claimed to be subject to the attorney-client privilege. There is no evidence of the existence of a joint defense agreement; the parties to it; its date of origin; or its scope. Even in the face of the plaintiff's motion to compel, the defendant has done nothing to make the required showing of the applicability of either the attorney-client privilege or the joint defense privilege. As the circuit court stated in Peat Marwick:

> A party seeking to assert the privilege must make a clear showing that it applies. Failure to do so is not excused because the document is later shown to be one which would have been privileged if a timely showing had been made. **Even though it does not seem seriously disputed that the privilege would have attached if the objection had been timely and adequately**

> **asserted, that such a showing had not been made when the trial court was called upon to make its ruling defeats the privilege.**

748 F.2d at 542 (emphasis added).[2]

Except as to the documents itemized on the privilege log, I find that the defendant has failed to meet its burden to establish the applicability of the attorney-client privilege or the work-product immunity and has failed to establish either the existence or the applicability of a joint defense agreement. Those privileges with respect to documents not included on the privilege log are waived. See Atteberry v. Longmont United Hospital, 221 F.R.D. 644, 648-49 (D. Colo. 2004)(applying the Peat Marwick case and holding that asserted privileges are waived where "[t]here is no privilege log whatsoever or other attempt . . . to provide sufficient information to enable the plaintiffs or the court to determine whether each element of the asserted objection is justified").

I have reviewed the privilege log with respect to the 30 documents listed on it to determine whether the defendant has carried its burden of showing that the claimed privilege applies. Each of the 30 listed documents is claimed to be subject to the privilege created by section 10-4-1003, C.R.S., which provides:

> (1)(a) When any person or insurer has reason to believe that a fire loss may have been caused by other than accidental means or that

---

[2]The defendant inquired at oral argument whether I wanted her to submit a "more specific" privilege log. Transcript [Doc. # 83, filed 1/22/200] at p. 65 lines 9-21. I declined the request, id., and have relied here on the privilege log as it existed at the time of the hearing. That log constitutes the showing made "when the trial court was called upon to make its ruling," under the Peat Marwick decision. In any event, no further privilege log has been presented during the pendency of the Plaintiff's Motion to Compel.

8

>any insurance claim may be fraudulent, then such person may, and such insurer shall, notify an authorized agency.
>
>(b) A notification pursuant to paragraph (a) of this subsection (1) shall be confidential, shall not constitute a public record under part 2 of article 72 of title 24, C.R.S., and shall not be discoverable or admissible in any civil action.
>
>\* \* \*
>
>(8)(a) Any person that has reason to believe that a fire loss may have been caused by other than accidental means, that any insurance claim or application for insurance coverage may be fraudulent, or that a fraudulent insurance act has been committed, may, and any insurer that has reason to believe the same shall, furnish and disclose any relevant information in its possession concerning such loss, claim, or act to any insurer or authorized agency for the purpose of detecting, prosecuting, or preventing fraudulent insurance claims.  Such reporting shall be confidential, shall not be a public record under article 72 of title 24, C.R.S., and shall not be discoverable or admissible under the Colorado rules of civil procedure in any civil litigation, but only to the extent that the insurer or person disclosing the information is granted immunity under section 10-4-1005.

The privilege created by section 10-4-1003 applies to a "notification" or "report" of insurance fraud made to "an authorized agency."  There is no requirement that the notification or report be made in writing.  An "authorized agency" under the act includes a fire department; the Colorado Bureau of Investigation; the Colorado Attorney General's office; any other law enforcement agency authorized or charged with the investigation of crimes; any district or county attorney and their representatives; and any professional licensing board or regulatory agency, including the division of insurance.  Section 10-4-1002(1), C.R.S.  A document other than a notification or report to an authorized agency, even though it may deal with the alleged fraud, is not privileged by the plain terms of the statute.

9

Eleven of the 30 documents alleged to be subject to the privilege created by section 10-4-1003 indicate that there was no recipient. These documents generally are described as reflecting communications with others about a notification or report of fraud. The following documents are described as being notes of conversations between representatives of Lincoln Benefit and other insurance companies: LBL 000234; 00700; 000942; and 000946. Section 10-4-1003 does not purport to make communications with others not an "authorized agency" privileged, even if the communication deals with an alleged insurance fraud. As to these documents, the defendant has failed to establish the applicability of the claimed privilege.

The remaining documents itemized on the privilege log either are a "notification" or "report" of insurance fraud made to "an authorized agency"; are notes reflecting communications between Lincoln Benefit and a representative of an authorized agency; or are notes reflecting communications between Lincoln Benefit and its counsel. I find that these documents are subject to the privilege created by section 10-4-1003, C.R.S., or the attorney-client privilege, or both, and as to them the defendant has met its burden of establishing that a privilege exists to protect the document from production.

The Motion to Compel is GRANTED IN PART to require the defendant to produce to the plaintiff on or before **July 17, 2007**, all documents in its possession, custody, and control responsive to Production Requests No. 14, 16, and 17, including documents numbered LBL 000234; 00700; 000942; and 000946 on the defendant's privilege log, but excluding all other documents specified on that log. The Motion to Compel is otherwise DENIED.

## II.  The Motion for Default

The Motion for Default at its core is a motion for sanctions for failure to make discovery. Motion for Default at pp.17-19.  The motion is altogether lacking in merit and is DENIED.

IT IS ORDERED that the Motion to Compel is GRANTED IN PART and DENIED IN PART as specified above.

IT IS FURTHER ORDERED that the Motion for Default is DENIED.

Dated July 2, 2007.

                              BY THE COURT:

                              s/ Boyd N. Boland
                              United States Magistrate Judge